# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THE GARVEY GROUP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 11 C 1678 |
| | ) | |
| v. | ) | Magistrate Judge Finnegan |
| | ) | |
| KBA NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff The Garvey Group LLC filed suit seeking to recover damages it incurred arising out of the malfunction of a printing press it owned that was manufactured, sold, installed, and serviced by Defendant KBA North America, Inc. Specifically, pursuant to 28 U.S.C. § 1332(a)(1), Plaintiff asserts claims for negligent repair, breach of contract, and breach of implied warranty. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Defendant has moved to dismiss Counts I (negligent repair) and III (breach of implied warranty) of the First Amended Complaint. In its response to the motion, Plaintiff declined to address Defendant's arguments concerning Count III and instead agreed to amend the complaint to remove any claim for breach of implied warranty. Accordingly, only Count I for negligent repair remains at issue in this motion. Defendant argues that Count I should be dismissed because it seeks economic damages for a tort claim, which is barred under Illinois law. For the reasons set forth below, the motion is denied.

**DISCUSSION**

A. **Background**

Defendant designed, manufactured, and sold to Plaintiff a KBA Rapida 162 color printing press with UV dryer ("the press"), and installed it at Plaintiff's facility in Niles, Illinois. (Doc. 24 ¶ 4). In August 2006, the press malfunctioned and Defendant repaired it at no cost to Plaintiff. (*Id.* at ¶¶ 5-6). The press malfunctioned again in July 2007, and Defendant again repaired the press, this time at Plaintiff's expense. (*Id.* at ¶¶ 7-9). A week after the press was returned to service, however, it again malfunctioned, damaging or destroying "numerous gripper bars, multiple sections of the conveyor chain, holding/anchor pins and other press components." (*Id.* at ¶¶ 10-11).

B. **Choice of Law**

As a preliminary matter, this Court must determine which state's substantive law applies to this case. "When a federal court hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing,* Inc., 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In deciding choice-of-law questions in tort cases, Illinois, the forum state in this case, uses the "most significant relationship" approach.[1] *Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp.

---

[1] In Illinois, a " choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 155, 879 N.E.2d 893, 898 (2007). Here, it is not clear that any such conflict exists with the law of Texas, where Defendant has its principal place of business (Doc. 24 ¶ 3), and which is the only other state that arguably may have an interest in this case. Indeed, it appears that the relevant substantive rule of law concerning economic loss recovery in tort is the same in both Texas and Illinois.

2d 702, 710 (N.D. Ill. 2007) (citing *Esser v. McIntyre*, 169 Ill.2d 292, 297-298, 661 N.E.2d 1138, 1141 (1996)). Under this approach, there is a presumption that the law of the place of injury controls unless another state "has a more significant relationship with the occurrence and with the parties." *Esser*, 169 Ill.2d at 298, 661 N.E.2d at 1141 (citing *Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593 (1970)); *see also Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 163-164, 879 N.E.2d 893, 903 (2007). In determining whether another state has a more significant relationship, the factors to consider are "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Esser*, 169 Ill.2d at 298, 661 N.E.2d at 1141 (citing *Ingersoll*, 46 Ill.2d at 47, 262 N.E.2d at 596); *see also Townsend*, 227 Ill.2d at 160, 879 N.E.2d at 901.

Here, Plaintiff has pleaded that the damage to its printing press took place at its facility in Niles, Illinois. (Doc. 24 ¶¶ 4, 7, 11). Thus, the first contact supports a presumption that Illinois substantive law applies. Consideration of the additional three contacts fails to overcome the presumption in favor of Illinois. The second contact – the location of the injury-causing conduct – also favors Illinois since the malfunction and allegedly negligent repair of the printing press took place in Illinois. (*Id.* at ¶¶ 5-11). The third contact – domicile – is a draw since Plaintiff is domiciled in Illinois while Defendant,

---

*Compare Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (holding that the economic loss rule precludes economic recovery in tort when losses arise from the failure of a product and damage is limited to the product itself, but does not preclude recovery when the defective product also causes personal injury or damage to other property), *with Trans States Airlines v. Pratt & Whitney Canada Inc.*, 177 Ill.2d 21, 38-52, 682 N.E.2d 45, 53-60 (1997) (same). Nonetheless, this Court undertakes the choice-of-law analysis rather than engage in an extensive analysis and comparison of Texas and Illinois law.

although authorized to conduct business there, is domiciled in Texas. (*Id.* at ¶¶ 1-3). The fourth contact – where the relationship of the parties is centered – favors Illinois since the parties' business relationship arose from Plaintiff's purchase from Defendant of a printing press to be used in Illinois and which Defendant installed and serviced in Illinois. (*Id.* at ¶¶ 4, 6, 9). *See Townsend*, 227 Ill.2d at 168-169, 879 N.E.2d at 905-906. Therefore, Illinois is the state with the most significant relationship to this case, and Illinois substantive law applies.

C.  **Rule 12(b)(6) Standard**

In evaluating the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the underlying factual merits. *See Christensen v. County of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). "To survive a motion to dismiss, "the plaintiff must do more in the complaint than simply recite elements of a claim; the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. *See also Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010). A plaintiff need provide "only enough detail to give the defendant fair notice of what the claim is and the grounds upon

which it rests." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)). But a party also "may plead itself out of court by pleading facts that establish an impenetrable defense to its claims." *Tamayo*, 526 F.3d at 1086. This occurs "'when it would be necessary to contradict the complaint in order to prevail on the merits.'" *Id.* (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)).

**D.  Analysis**

The negligent repair claim in Count I alleges that Defendant "owed [Plaintiff] a duty to exercise reasonable due care and caution in the manner in which it serviced and repaired the subject press, to perform in a workmanlike manner that was compliant with all applicable codes and industry standards[,] and to return the subject press to a condition that was appropriate for continued normal use." (Doc. 24 ¶ 16). Plaintiff alleges that Defendant breached this duty by committing one or more of ten enumerated "negligent and careless acts and/or omissions." (*Id.* at ¶ 17).

Defendant argues that Plaintiff has failed to state a claim for negligent repair because the First Amended Complaint ("FAC") alleges a tort claim for economic damages, which is barred under Illinois law. The long-standing rule in Illinois is that recovery of economic losses alone is not permissible in negligence actions where only the defective product is damaged. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 88, 435 N.E.2d 443, 451-52 (1982). Contract law and the Uniform Commercial Code, rather than tort law, provide the appropriate remedy in such instances where the harm relates to the consumer's diminished expectations concerning a product's quality and fitness for ordinary use, and the harm is not coupled with personal injury or damage to other property. *See id.*;

*In re Illinois Bell Switching Station Litigation*, 161 Ill.2d 233, 241, 641 N.E.2d 440, 444 (1994).

There are three exceptions to the *Moorman* economic loss doctrine: "(1) where the plaintiff sustained damage, *i.e.,* personal injury or property damage, resulting from a sudden or dangerous occurrence, (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representations, *i.e.,* fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *In re Chicago Flood Litigation*, 176 Ill.2d 179, 199, 680 N.E.2d 265, 275 (1997) (internal citations omitted) (citing *Moorman*, 91 Ill.2d at 86, 88-89, 435 N.E.2d 443 and *In re Illinois Bell Switching Station Litigation*, 161 Ill.2d at 240-241, 641 N.E.2d 440).

Here, Plaintiff argues that its claim falls within the first exception, noting that the FAC alleges that as a result of Defendant's negligent acts or omissions, "a sudden and calamitous event occurred that caused the subject press to suffer a catastrophic failure." (Doc. 24 ¶ 18). In reply, Defendant observes that this exception requires that the malfunctioning of the printing press result in damage to property other than the press itself. Further, Defendant argues that neither damage to component parts of the press, nor any *de minimis* loss of paper, satisfies the exception. This Court agrees.

In *Trans States Airlines v. Pratt & Whitney Canada Inc.*, the Illinois Supreme Court reconsidered the *Moorman* doctrine in light of public policy and subsequent case law, and held that a party cannot recover in tort for damage to a single product resulting from a sudden and calamitous event. *Trans States Airlines*, 177 Ill.2d 21, 42, 682 N.E.2d 45, 54-55 (1997). While the court held that a product and one of its component parts can

6

constitute two separate products, it found that the airframe and engine at issue in the case did not constitute two separate products, and thus did not fall within the *Moorman* exception for other property, because plaintiff bargained for a fully integrated aircraft rather than a separate engine and a separate airframe. *Id.*, 177 Ill.2d at 49-51, 682 N.E.2d at 58-59.

In this case, the FAC does not specify what particular damages occurred. Instead, it broadly alleges only that "[a]s a direct and proximate result of one or more or all of the foregoing acts and/or omissions, a sudden and calamitous event occurred that caused the subject press to suffer a catastrophic failure," resulting in damages in excess of $240,000. (Doc. 24 ¶ 18). However, in its response to the motion to dismiss, Plaintiff asserts for the first time that paper and other supplies were damaged when the press suddenly malfunctioned. Plaintiff further argues that its allegation that "damage" was sustained "must be read to include damage not only to the printing press itself but also to other property belonging to the Plaintiff – specifically, other component parts, paper, and other stock and business supplies." (Pl. Resp. at 3).

This Court agrees that pleading with factual specificity is not necessary, as the federal rules require only notice pleading. *See Reger Dev.*, 592 F.3d at 764 (a complaint need provide "only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests.") (quoting *Tamayo*, 526 F.3d at 1083). In addition, a plaintiff "is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment." *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). Thus, it is not fatal to its negligence claim that Plaintiff alleges damage to

component parts and other business inventory for the first time in its response to the motion to dismiss.

That said, Plaintiff must be cognizant — particularly in light of the legal arguments raised by Defendant in the instant motion — of the potential futility of its negligence claim absent evidence that the damaged component parts were bargained for separately from the product itself.[2]  *See Trans States Airlines*, 177 Ill.2d at 49-51, 682 N.E.2d at 58-59. Plaintiff does not allege in the FAC or in its response to the motion that any damaged component parts were bargained for separately from the printing press when it made the purchase.  It is unknown at this juncture whether Plaintiff possesses a purchase agreement that establishes such facts.  In addition, Defendant makes a well-reasoned argument that incidental damage cannot be recovered in tort under *Moorman*.  *See Vacuum Indus. Pollution, Inc. v. Union Oil Co. of Cal.*, 764 F.Supp. 507, 513 (N.D. Ill. 1991) (dismissing a negligence claim related to a refinery tank explosion because fifteen feet of crushed suction hose was a "trivial" amount of other property damage in an action seeking damages in excess of one million dollars); *Westfield Ins. Co. v. Birkey's Farm Store, Inc.*, 399 Ill.App.3d 219, 233, 924 N.E.2d 1231, 1244 (3d Dist. 2010) (finding that employee clothing and a fire extinguisher were "the exact type of property one would expect to be damaged as a direct or incidental consequence of the tractor fire and are, therefore, also barred by the economic loss doctrine.").  To the extent that the other property damage alleged in this case is merely torn, smudged or otherwise damaged paper, this seems to be precisely the kind of direct and incidental damage to be expected when a printing press suddenly

---

[2]     If Plaintiff pursues a claim that it knows to be factually or legally insufficient, it may run afoul of Rule 11 of the Federal Rules of Civil Procedure.

malfunctions. But it is unknown whether the paper Plaintiff now asserts was damaged was of such quantity or unique quality as to constitute a non-incidental portion of the total damages. If Plaintiff can prove these facts, i.e. that the damaged component parts were bargained for separately from the press itself or that the damaged paper or supplies were not an incidental loss, then the negligence claim may fall within the *Moorman* exception. Since at this stage of the proceeding, Plaintiff is not obligated to plead its damages with factual specificity, dismissal of the lawsuit now would be premature.

## **CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss [Doc. 28] is denied as to Count I and moot as to Count III, and Plaintiff is granted leave to amend the First Amended Complaint to remove Count III.

ENTER:

Dated: August 1, 2011

_____
SHEILA FINNEGAN
United States Magistrate Judge